UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
JEANNA E. HUSSEY,

                Plaintiff,

      - against -

NEW YORK STATE DEPARTMENT OF
LAW/OFFICE OF ATTORNEY GENERAL,
HON. GOVERNOR ANDREW CUOMO,
JAMES ROGERS, EUGENE LEFF,
KATHERINE KENNEDY AND JANICE DEAN
IN THEIR INDIVIDUAL CAPACITIES,

                Defendants.
-----------------------------------------------------------X

**MEMORANDUM AND ORDER**
11-CV-0206 (RRM) (RLM)

ROSLYNN R. MAUSKOPF, United States District Judge.

      Plaintiff Jeanna E. Hussey brings this action against defendants New York State Office

of the Attorney General ("OAG"), and James Rogers, Eugene Leff, Katherine Kennedy and

Janice Dean in their individual capacities.[1]  She sues the OAG for race discrimination under Title

VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq*., and the individual defendants

for race discrimination under 42 U.S.C. § 1983.  (Second Am. Compl. ("Compl.") (Doc. No. 7.)

at 1, ¶ 1.)  She also asserts a state law claim of defamation.  (*Id.*)  Plaintiff alleges that defendants

unlawfully failed to promote her to the position of Section Chief of the OAG's New York City

Environmental Protection Bureau, hiring defendant Dean instead, that they removed her as lead

attorney on a major case, and that they made defamatory statements about her work performance.

(Compl. at 3-4, ¶ 13-14; 9, ¶ 42; 10, ¶ 46.)

---

[1] Plaintiff voluntarily dismissed her claims against Governor Andrew Cuomo by stipulation entered June 24, 2011.
(Doc. No. 13.)

On August 8, 2012, all defendants moved to dismiss the action for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. No. 15.) For the reasons that follow, defendants' motion is granted in its entirety and plaintiff's complaint is dismissed.

## BACKGROUND

Upon information and belief, plaintiff Jeanna Hussey, an attorney with a background in environmental law, has been an Assistant Attorney General ("AAG") at the OAG since 1999. (Compl. at 3, ¶ 9.)[2] Between October 14, 1999 and February 27, 2011, she worked in the OAG's Environmental Protection Bureau. (*Id.*) In February of 2011, she was transferred to the OAG's Consumer Fraud and Protection Bureau. Plaintiff alleges that events prior to this transfer constituted unlawful discrimination under Title VII and 42 U.S.C. § 1983.

First, plaintiff claims that defendants unlawfully failed to promote her because she is African American, promoting defendant Dean, who is white, instead. (Compl. at 4, ¶¶ 15-16; 5, ¶ 5.) In support, plaintiff alleges that in December 2008, plaintiff orally applied to defendant Katherine Kennedy, the Chief of the Environmental Protection Bureau, for the position of Toxic and Cost Recovery Section Chief. (Compl. at 3, ¶¶ 12-13.) The former Section Chief, defendant Eugene Leff, had recently been promoted to Deputy Bureau Chief, and plaintiff believed that she was qualified for his former position based on her extensive litigation experience and seniority in the Toxic Cost and Recovery Section. (*Id*. at 3, ¶ 12; 4, ¶ 16.) In January 2010, Mr. Leff informed plaintiff that defendant Dean had been selected for the position of Section Chief. (*Id.* at 3-4, ¶ 14.) Plaintiff alleges, "upon information and belief," that the decision to deny her the

---

[2] As a preliminary matter, the Court notes that a majority of plaintiff's allegations are made "upon information and belief" – including such things as the introductory statement that plaintiff has a background in environmental law and has worked as an AAG since 1999. Indeed, of the complaint's 71 paragraphs, a full 57 are so pled. A plaintiff is permitted to make allegations upon information and belief where the facts are "peculiarly within the possession and control of the defendant . . . or where the belief is based on factual information that makes the inference of culpability plausible." *See Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010). While some of plaintiff's allegations are appropriate, many others suggest that the allegations in question are wholly unsupported and borne solely of plaintiff's own conjecture.

promotion in favor of Ms. Dean was motivated by racial discrimination. (*Id.* at 5, ¶ 21.) However, when plaintiff asked Kennedy why she hadn't received the promotion, Kennedy told plaintiff that plaintiff's writing needed improvement and that there was a concern that her duties as a single parent would interfere with increased responsibilities at work. (*Id.* at 5, ¶ 20.) In addition to the non-discriminatory reasons that defendant Kennedy offered to plaintiff, plaintiff provides the Court with two more of her own. She alleges, "upon information and belief," that if she had received the promotion, her salary would have eventually exceeded defendant Leff's, and that "defendants Rogers, Leff and Kennedy did not want that scenario to happen." (*Id.* at 5, ¶ 24.) Plaintiff also alleges solely "upon information and belief, it was general knowledge in defendant's [*sic*] environmental protection bureaus that defendants Rogers and Dean had a personal relationship outside the office." (*Id.* at 5, ¶ 25.)

Despite these alternative explanations, plaintiff alleges "upon information and belief" that she "could only view . . . Kennedy's response . . . as being a pretext to cover up racial discrimination," because defendant Dean had also received criticism on her written work product in the past. (*Id.* at ¶ 21.) In support of her race discrimination theory, plaintiff argues (entirely "upon information and belief") that there was policy of discrimination against African Americans with respect to hiring during Governor Andrew Cuomo's tenure as New York State Attorney General. (*Id.* at 6, ¶¶ 27-30.) According to plaintiff, only twenty-five out of 800 attorneys employed by the OAG were African American, and of those twenty-five attorneys, only four were section chiefs. (*Id.* at 7, ¶ 29.) Those four allegedly held those positions before Governor Cuomo was elected Attorney General. (*Id.*) Plaintiff claims that the failure to promote her to Section Chief was a direct result of this alleged "policy and custom of disproportionate hiring and promoting." (*Id.* at 7, ¶ 31.)

Next, plaintiff alleges that her removal as lead counsel on *State v. Next Millenium Realty* ("*Next Millenium*"), a complex environmental litigation that she worked on between 2006 and 2010, was racially discriminatory. (Compl. at 7, ¶ 33; 9, ¶ 42; 14, ¶¶ 62-63.) As alleged by plaintiff, at some point between 2008 and 2009, defendants Leff and Kennedy tasked defendant Dean with preparing the State's privilege log in that case. (*Id.* at 7, ¶ 34, 36.) In November, 2009, opposing counsel in *Next Millenium* complained that the State's log was deficient. (*Id.* at 8, ¶ 37.) When the magistrate judge presiding over discovery asked plaintiff whether she had read the privilege log, she answered "no" on the record because defendant Dean had prepared the log and plaintiff had not personally reviewed it. (*Id.*) The purported deficiencies in the log subsequently became the subject of a sanctions motion that the defendants in *Next Millenium* filed in March, 2010. (*Id.* at ¶ 38.) Shortly after the motion was filed, plaintiff alleges "upon information and belief" that defendant Rogers "could be heard yelling in the open area where the secretaries, [other defendants] and other assistant attorney general's [*sic*] are located, that, 'She (meaning plaintiff) fucked the case up.'" (*Id.* at ¶ 39.) About a week later, plaintiff left for a scheduled vacation. (*Id.* at ¶ 40.) Upon her return, defendant Rogers removed her as lead counsel on *Next Millenium* and instructed her to continue working on the case in a non-leadership capacity. (*Id.* at 6-7, ¶ 41-42.) Plaintiff believes that she was used as a "black scapegoat" for defendant Dean's mistakes with respect to the privilege log and subsequent motion for sanctions. (Pl.'s Br. in Opp'n Mot. Dismiss ("Pl.'s Br.") at 9.)

As alleged by plaintiff, defendants subsequently placed a "write-up in plaintiff's personnel file which alleged that plaintiff had been stealing time." (Compl. at 8, ¶ 39; 10, ¶ 46.) This "write-up," which is more aptly described as a counseling memo, was produced, upon plaintiff's information and belief, by defendant Dean at the instruction of defendants Rogers and

Leff and placed in plaintiff's personnel file on June 22, 2010.  (*Id.* at 9, ¶ 44; 10, ¶ 46.)  It contained a variety of criticisms pertaining to plaintiff's work ethic and work product, all of which plaintiff disputed in a written response that was also placed in her file.  (*Id.* at 11-13, ¶¶ 46-57.)  Plaintiff alleges that she was encouraged to respond orally instead of in writing to the memo, and that because she chose to respond in writing she was subjected to increased supervision and assigned less challenging cases.  (*Id.* at 9, ¶ 45; 15, ¶ 69.)

Finally, plaintiff claims that defendants defamed her, though she does not identify which of the statements she describes are allegedly defamatory, or how.  (Compl. at 1, ¶ 1.)  As the Court construes the Complaint, plaintiff is referring to two statements: defendant Rogers' oral accusation that plaintiff "fucked the case up," and the counseling memo that was placed in plaintiff's file following her removal as lead counsel from *Next Millenium*.  Plaintiff claims that this memo was an attempt to blame her for errors made by defendant Dean and that it "defam[ed] her reputation by asserting untruths."  (*Id.*, at 11, ¶ 48; Pl.'s Br. at 8)  Other than that, she pleads no facts pertaining to a defamation claim.

As a result of these events, plaintiff filed a discrimination claim with the New York State Department of Human Rights ("DHR") on July 12, 2010.  (Compl. at 13, ¶ 58.)  She received a "right to sue" letter from that department dated October 29, 2010.  (*Id.* at 14, ¶ 66.)  Plaintiff states that she is the only African American attorney in the Manhattan office of the Environmental Law Bureau and that defendants "have never treated another attorney in the environmental bureau as they have treated" plaintiff.  (*Id.* at 14, ¶¶ 62, 64.)  She now claims that her reputation as an expert in toxic litigation has been damaged by defendants' actions and that defendants have "created an atmosphere" in which she does not feel comfortable working, which

in turn has "affected her passion for environmental law." (*Id.* at 14-15, ¶ 67.) In addition, she claims that she "suffered and continues to suffer emotional harm." (*Id.* at 15, ¶ 71.)

**STANDARD OF REVIEW**

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) requires the court to examine the legal, rather than factual, sufficiency of a complaint. As required by Rule 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A court considering a 12(b)(6) motion must "take[] factual allegations [in the complaint] to be true and draw[] all reasonable inferences in the plaintiff's favor." *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009) (citation omitted). A complaint need not contain "'detailed factual allegations,'" but it must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. 662, at 678 (quoting *Twombly*, 550 U.S. at 555). In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). A complaint that provides only "'naked assertions devoid of further factual enhancement'" is insufficient. *Id.* (quoting *Twombly*, 550 U.S. at 557). Rather, the plaintiff's complaint must include "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). The determination of whether "a complaint states a plausible claim

for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citing *Iqbal v. Hasty*, 490 F.3d 143, 157–158 (2d Cir. 2007)). However, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – that the pleader is entitled to relief." *Id.*, at 678 (citing Fed. R. Civ. P. 8(a)(2).)

## DISCUSSION

As a preliminary matter, the Court notes that "on a motion to dismiss for failure to state a claim, the court may consider, in addition to the four corners of the plaintiff's pleading, any document . . . where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint." *Washington v. Garage Management Corp.*, No. 11 Civ. 3420, 2012 WL 4336163, at *1 (S.D.N.Y. Sept. 20, 2012) (internal citation omitted). *See also Rothman v. Gregor*, 220 F.3d 81, 87 (a complaint is deemed to include "documents that the plaintiffs either possessed or new about and upon which they relied in bringing the suit"). To consider such documents, the Court must find that it is "clear on the record that no dispute exists regarding the authenticity or accuracy of the document[s]" and that "there exist no material disputed issues of fact regarding the relevance of the document[s]." *Washington*, 2012 WL 4336163, at *1.

Accordingly, the Court finds appropriate to consider the following documents for the purposes of this motion to dismiss: (1) the employee evaluations attached as Exhibits A and B to plaintiff's brief in opposition to the motion (Doc. Nos. 18-1, 18-2); (2) pages 7-10 of the *Next Millenium* transcript that is attached to defendants' motion to dismiss as Exhibit M (Doc. No. 17-6, at 21-24); and (3) the administrative complaint that plaintiff filed with the DHR prior to filing the instant lawsuit, attached to defendants' motion as Exhibit 1(Doc. 17-1.) The Court has no

reason to question the authenticity or accuracy of any of these documents. *See Washington*, 2012 WL 4336163, at *1. Furthermore, as the Complaint relies upon all three of the documents, the Court assumes that plaintiff possessed or knew about them when she brought this suit.[3] *See Rothman*, 220 F.3d at 87.

## I.    <u>Plaintiff Fails to State a Claim for Race Discrimination Under Title VII</u>

A plaintiff at the pleading stage of an employment discrimination claim is not required to set forth allegations sufficient to make out a prima facie case of employment discrimination to survive a motion to dismiss. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002). Indeed, pleading requirements for discrimination cases are "very lenient, even de minimus." *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 710 (2d Cir. 1998). However, even in the discrimination context, "a pleading that offers only 'labels and conclusions . . . will not do.'" *Alvarez v. Rosa*, No. 11. Civ. 3818 (KBF), 2012 WL 651630, at *2 (S.D.N.Y. Feb. 28, 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Title VII of the Civil Rights Act of 1965 makes it an "unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "It is axiomatic that mistreatment at work is actionable under Title VII only when it occurs *because of* an employee's . . . protected characteristic." *Patane v. Clark*, 508 F.2d 106, 112 (2d Cir. 2007) (emphasis added). Therefore, despite the liberal pleading standard, "a complaint must . . . allege the essential elements of an employment discrimination claim, including discrimination on the basis of protected status." *Perry v. State of New York Department of Labor*, No. 08 Civ. 4610(PKC), 2009 WL 2575713, at

---

[3] Plaintiff quotes directly from the employee evaluations. (Compl. at 7-8, ¶ 36). She also describes the excerpted portions of the *Next Millenium* transcript in detail. (Compl. at 8, ¶ 37.) Finally, she specifically refers to the discrimination claim that she filed with the DHR on July 12, 2010. (Compl. at 13, ¶ 58.)

*2 (S.D.N.Y. Aug. 20, 2009). The Court is mindful that its ultimate role in the employment discrimination context "is to prevent unlawful hiring practices, not to act as a superpersonnel department that second guesses employers' business judgments." *Byrnie v. Bd. of Educ.*, 243 F.3d 93, 103 (2d Cir. 2001). Here, plaintiff has failed to allege facts sufficient to "nudge" her claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

## A.    Failure to Promote

To establish a prima facie case of a discriminatory failure to promote, a Title VII plaintiff must demonstrate that "(1) she is a member of a protected class; (2) she applied and was qualified for a job for which the employer was seeking applicants; (3) she was rejected for the position; and (4) the position remained open and the employer continued to seek applicants having plaintiff's qualifications." *Estate of Hamilton v. City of New York*, 627 F.3d 50, 55 (2d Cir. 2010). Though a plaintiff "need not allege each and every element of a *prima facie* case to survive a motion to dismiss . . . these elements provide an outline of what is necessary to render claims for relief plausible." *Rolle v. Educational Bus Transp., Inc*., No. CV 11-3855 (SJF)(AKT), 2013 WL 783026, at *6 (E.D.N.Y. Feb. 12, 2013) (Report and Recommendation, adopted in full by 2013 WL 783011 (E.D.N.Y. Feb. 27, 2013)) (citation and internal quotation marks omitted). Plaintiff is, however, required to allege some facts – not mere conclusions – plausibly suggesting that the decision to pass her over for the promotion that defendant Dean ultimately received was made because of plaintiff's race. *See Rolle*, 2013 WL 7830206, at *12 (finding that broad statements unaccompanied by factual content are insufficient to allow the Court to draw the reasonable inference that defendant is liable for the alleged misconduct).

Here, plaintiff fails to allege any facts that would suggest a discriminatory reason for defendants' failure to promote her. *See Alvarez*, 2012 WL 651630, at *4 (dismissing

discrimination claim for failure to "plead facts that create an inference that any adverse action taken by any defendant was based upon [membership in] a protected class") (internal citation omitted). Rather, she reports in the complaint that Ms. Kennedy explained the decision not to promote plaintiff on the grounds that plaintiff's writing needed improvement and that there was some concern that she would not be able to balance her duties as a single parent with the new position. (Compl. at 5, ¶ 20.) Though plaintiff insists that this was "a pretext to cover up racial discrimination," she offers no facts in support of that claim and therefore fails to allege sufficiently that the failure to promote her arose was based on her race. *See Alvarez*, 2012 WL 651630, at *4 (dismissing a claim for failure to promote where plaintiff "provide[d] only speculations, labels, and conclusions, in support of her claims" and the complaint "fail[ed] to identify any particular conduct or remarks made by the individual defendants that could be viewed as reflecting discriminatory animus").

Significantly, plaintiff does not dispute that she has received critical evaluations on the basis of her writing in the past. In fact, she has provided the Court with a performance evaluation summary for the period between April 1, 2007 and March 31, 2008, which states, with respect to plaintiff's research and writing skills: "Jeanna's writing has improved to some degree. Continued efforts, including work on grammar, could strengthen her briefs and letters." (Ex. A (Doc. No. 18-1) at 5.) By contrast, plaintiff herself alleges "upon information and belief, that defendant Dean received an evaluation "where she received the highest rating of a 5 . . . [and was] commented as being a star by defendant Kennedy." (Compl. at 6-7, ¶ 36.) In that evaluation, defendant Dean's writing was described as "very good," "clear and concise," "completed . . . well in advance of filing deadlines," and "[un]distracted by collateral or academic issues." (Ex. B. (Doc. No. 18-1) at 11.) Plaintiff's reliance on Dean's evaluation

wholly undermines her claim that Kennedy's criticism about plaintiff's writing was mere pretext. Indeed, such reliance fully supports defendants' legitimate reasons for promoting Dean over plaintiff.

Moreover, plaintiff's own Complaint provides at least two additional nondiscriminatory reasons for defendants' decision to pass her over for the promotion in favor of defendant Dean. First, she states upon information and belief that defendants Rogers, Leff, and Kennedy did not want plaintiff to earn a higher salary than that of defendant Leff. (Compl. at 5, ¶ 24.) Second, she alleges, also upon information and belief, that defendants Rogers and Dean had a personal relationship outside the office. (*Id*. at 5, ¶¶ 24-25.) Even construed in the light most favorable to plaintiff, these allegations suggest favoritism toward Dean, not racial discrimination against plaintiff. *See Rolle*, 2013 WL 783026 at *13 (dismissing a discrimination claim when plaintiff's own complaint "suggest[ed] that [defendant] was motivated by a personal dislike, rather than unlawful bias"). "In assessing the plausibility of [p]laintiff's claims, the Court . . . considers, as it must, whether alternative explanations exist." *Id*. By offering her own alternative, non-discriminatory explanations for the decision not to promote her, plaintiff wholly undermines the plausibility of her discrimination claim.

Plaintiff's attempt to show that the failure to promote her to Section Chief was the result of a discriminatory hiring pattern in the OAG is also unsuccessful. (Compl. at 6-7, ¶¶ 27-31.) As defendant successfully argues, plaintiff's "conclusory and unsupported allegations, made only upon information and belief, which attempt to allege a pattern of racial discrimination in the OAG under the Cuomo administration, simply do not cross the line of plausibility." (Mot. Dismiss at 11.) Plaintiff claims that she was not promoted "as a result of defendants' individual policy and custom of disproportionate hiring and promoting African American line attorneys."

(Compl. at 7, ¶ 31.)  To illustrate this alleged policy, she offers, "upon information and belief,"

unsupported statistics about the number of African American attorneys in the OAG during

Governor Cuomo's administration.  (*Id.* at 6, ¶¶ 28-30.)

Plaintiff's allegations in this vein fail to state a plausible claim.  Few courts have

considered the use of statistics during the pleading stage of a disparate treatment claim, likely

because a plaintiff is not required to provide evidence or prove any of her claims to survive a

motion to dismiss.  *See Swierkiewicz*, 534 U.S. at 511 (noting that the issue is "not whether a

plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support

the claims") (internal citation omitted).  However, cases that deal with the use of statistics on

summary judgment are instructive in this instance because they help provide an outline of what

plaintiff's statistics could conceivably be used to demonstrate as a matter of law.  *See Rolle*, 2013

WL 783026, at *6 (noting that the elements of a prima facie case of discrimination "provide an

outline of what is necessary to render claims for relief plausible").

In the discrimination context, statistical evidence is typically used to bolster claims of

disparate impact, rather than claims alleging disparate treatment.  *See Hudson v. Int'l Bus.*

*Machines Corp.*, 620 F.2d 351, 355 (2d Cir. 1980).  This is because the prima facie case for

disparate treatment claims is designed to allow plaintiffs to "create an inference of discrimination

by negative proof of legitimate reasons for an employment decision . . . [a method which] does

not seem to allow for positive proof of discrimination such as statistical evidence."  *Zenni  v.*

*Hard Rock Café International*, 903 F. Supp. 644, 653 (S.D.N.Y. 1995).  Indeed, though

statistical evidence is permissible in disparate treatment cases, it does not suffice to satisfy a

plaintiff's burden in a discrimination case.  *See Hudson*, 620 F.2d at 355 (where a plaintiff

otherwise fails to establish a disparate treatment claim, "statistics standing alone do not create

it"); *Lee v. Poughkeepsie City School Dist.*, No. 06-CV-4660 (KMK), 2008 WL 852790 at *10,

n.7 (S.D.N.Y. March 31, 2008) (finding that statistics alone are insufficient to establish a

disparate treatment claim because an individual plaintiff must prove that she *in particular* has

been discriminated against). Plaintiff has failed to set forth any link between the failure to

promote her and the alleged discriminatory animus of the defendants that could save her claim

from defendants' motion to dismiss. *Alvarez*, at *3 (dismissing a complaint in part for failing to

identify any particular conduct or remarks that could be viewed as reflecting discriminatory

animus). The statistics she offers cannot, standing alone, push her claim from conceivable to

plausible. *Cf. Hudson*, 620 F.2d at 355 (on summary judgment, statistics alone cannot save a

disparate treatment claim).

More importantly, the statistics themselves do not make an inference of discrimination

plausible. The numbers that plaintiff provides are unsupported and overbroad. Though plaintiff

alleges that Governor Cuomo's administration perpetuated a racially discriminatory hiring

policy, she makes no distinctions among attorneys that were hired during his administration,

before it, or after it. The statistic she cites – twenty-five African Americans out of 800 attorneys

– does not provide any information as to when these attorneys were hired, by whom, or why.

(Compl. at 6, ¶ 28.) Though plaintiff alleges that only four African American AAGs were

"section chiefs in the defendants' several bureaus" and that "they already had those positions

prior to defendant's [*sic*] Hon. Cuomo's administration," she offers no information as to any

hiring decisions that *were* made during Governor Cuomo's tenure as Attorney General. The

statistics offered here – if they can in fact properly be called statistics – provide no "facts from

which an inference of discrimination can be drawn." (Mot. Dismiss at 15.) They therefore fail

to make plaintiff's disparate treatment claim plausible on its face. *See Perry*, 2009 WL 2575713

at *3 (finding "statistics concerning minority composition of New York state public workforce" insufficient to make a race discrimination claim "plausible on its face").

In sum, plaintiff has "identifie[d] no . . . circumstances and pleads no facts giving rise to any inference of racially discriminatory intent" with respect to defendants' failure to promote her. *Johnson v. City of New York*, 669 F. Supp. 2d 444, 450 (S.D.N.Y. 2009). "The mere fact that plaintiff and defendants are of different races, standing alone, is simply insufficient as a factual pleading to allege racially motivated discrimination." *Id.* Plaintiff has done "little more than allege that [she] is African-American and that [she was] not [promoted]," which is insufficient to meet the threshold plausibility standard. *Moore v. KTR Development, LLC*, No. 09-CV-2925 (RJD)(RER), 2011 WL 572362, at *2 (E.D.N.Y. Feb. 16, 2011); *see also Edwards v. New York State Unified Court System*, No. 12 Civ. 46(WHP), 2012 WL 6101984, at *5 (S.D.N.Y. Nov. 20, 2012) (dismissing for failure to state a claim a complaint that did "nothing more than allege the familiar faulty syllogism" that because "something bad happened . . . at work" and plaintiff was a member of a protected class, the bad thing in question must have happened because of such membership). Accordingly, plaintiff's failure to promote claim fails.

## B.     Plaintiff's Allegations Pertaining to *State v. Next Millenium*

### 1. Removal as Lead Counsel

Plaintiff also fails to state a claim that her removal as lead counsel from *Next Millenium* was racially discriminatory. Once again, plaintiff fails to allege even a single fact suggesting that the decision had anything to do with her race. Though she states that she was "targeted as the black scapegoat for defendant Dean's flaws" and that "defendants were trying to blame plaintiff for the sanctions motion and to cover-up [*sic*] for defendant Dean," she offers no facts in support of these speculative conclusions. (Pl.'s Br. at 10; Compl. at 11, ¶ 48.) Nowhere, for

instance, does she "identify any particular conduct or remarks made by the individual defendants that could be viewed as reflecting discriminatory animus." *Alvarez*, 2012 WL 651630, at *4.

In addition, it is clear from plaintiff's own Complaint and from defendants' motion to dismiss that there was a legitimate, non-discriminatory reason to remove plaintiff from her leadership role. During the *Next Millenium* litigation, the magistrate judge became severely critical of the OAG, and specifically of Ms. Hussey's handling of the privilege log; at one point, he called the State's conduct "an outrage" and stated that he was "absolutely flabbergasted." (Ex. M at 9.) As defendant notes, "it was more than reasonable for Mr. Rogers to conclude that it was in the best interests of the State and its position in the litigation to have a different AAG represent the State." (Mot. Dismiss at 16.) In the face of this legitimate reason for her removal, plaintiff asserts nothing more than the speculative conclusion that she was made into a scapegoat for defendant Dean's alleged shortcomings. (Pl.'s Br. at 9.) Plaintiff's allegations concerning her removal as lead counsel from *Next Millenium* simply do not support a claim of discrimination motivated by race. *See Perry*, 2009 WL 2575713 at *4 (dismissing a Title VII claim for failure to allege facts indicating discriminatory animus).

## 2. The Counseling Memo

Similarly, to the extent that plaintiff asserts that the counseling memo itself was racially discriminatory, her argument fails. While plaintiff does not specifically allege that the counseling memo was racially discriminatory, she does claim that the memorandum was an attempt by defendants "to blame plaintiff for the sanction's [*sic*] motion and to cover up for defendant Dean who in fact was responsible." (Compl. at 11, ¶ 48.) A Title VII claim requires a plaintiff to demonstrate an adverse employment action. *Swierkiewicz*, 534 U.S. at 510. As a matter of law, a counseling memo does not constitute a materially adverse employment action

unless it is accompanied by other adverse changes in employment. *See Tepperwein v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 570 (2d Cir. 2011) ("[I]n the context of the issuance of a 'counseling memo' . . . criticism of an employee (which is part of training and necessary to allow employees to develop, improve, and avoid discipline) is not an adverse employment action."); *Uddin v. City of New York*, 427 F. Supp. 2d 414, 429-30 (S.D.N.Y. 2006) ("[N]egative evaluations standing alone without any accompanying adverse consequences are not adverse employment actions."). Here, defendants correctly note that plaintiff "alleges no additional consequences flowing from the counseling memo that would render it an adverse action." (Mot. Dismiss at 17.)

Even if the counseling memo could be viewed as an adverse employment action, plaintiff has failed to suggest that it was linked in any way to her race, alleging instead that the memorandum was an attempt by defendants to blame her for Defendant Dean's alleged mistakes. (Compl. at 11, ¶ 48.) There are neither plausible facts nor plausible inferences to suggest that plaintiff's work was criticized on the basis of her race. *See Sanders v. Grenadier Realty, Inc.*, 367 F. App'x 173, 175 (2d Cir. 2010) (affirming dismissal of a discrimination claim "because plaintiffs [did] not allege any fact supporting an inference of racial animus).

## C. Increased Monitoring and Decreased Responsibility

Plaintiff alleges that "as a result of [her] wish to respond to [the counseling memo] in writing, defendants subjected the plaintiff to disparate treatment by making her the only attorney in that office to be strictly monitored by defendants Rogers, Leff, and Dean." (Compl. at 15, ¶ 69.) Relatedly, plaintiff claims that she was subsequently assigned less challenging cases. (*Id.*) A reduction in job duties and increased supervision at work may constitute materially adverse employment actions for the purpose of Title VII. *Castro v. New York Bd. of Educ. Personnel*,

No. 96 Civ. 6314 (MBM), 1998 WL 108004 at *6 (S.D.N.Y. March 12, 1998) (noting that diminished job duties and opportunities for professional growth are materially adverse employment actions). However, by her own allegations, plaintiff repeatedly asserts that these changes were due to the fact that she responded in writing, rather than orally, to the counseling memo. (Compl. at 9, ¶ 45; 15, ¶ 69; Pl.'s Br. at 10.) Thus, such changes to her work assignment and supervision level were the product of plaintiff's decision to formally respond to the memo, and not the product of racial animus. Once again, plaintiff's own allegations wholly undermine her claims of discrimination. She has therefore failed to "allege facts from which the Court might reasonably infer that [the adverse action occurred] . . . because of her race."[4] *Alvarez*, 2012 WL 651630 at *4.

## D.    Hostile Work Environment

Though plaintiff does not specifically assert a hostile work environment claim, some of her allegations may be liberally construed as an attempt to raise one. Plaintiff sets forth an unspecified allegation of "harassment" and claims that "defendants have created an atmosphere where she would not feel comfortable working among them anymore in that bureau." (Compl. at 1, ¶1; 14-15, ¶ 67.) According to plaintiff, this atmosphere has "affected her passion for environmental law." (*Id.* at 15, ¶ 67.)

As a threshold matter, a district court may not adjudicate a Title VII claim unless it has been administratively exhausted, or is "reasonably related" to claims raised in an appropriate

---

[4] The Court notes that plaintiff has failed to include a retaliation claim in her pleadings, a cause of action which could theoretically address her allegation that defendants monitored her more closely and reduced her responsibility as a result of her response to the counseling memorandum. *See, e.g. Pantane*, 508 F.3d at 115 (reciting pleading requirements for a retaliation claim under Title VII). However, the Court is not obligated to plead plaintiff's case for her, and therefore declines to address this as of yet hypothetical cause of action. *See Perry*, 2009 WL 2575713, at *2 (noting that despite liberal pleading requirements, a complaint is required to allege the essential elements of a claim).

administrative proceeding. [5]  *See Alfano v. Costello*, 294 F.3d 365, 381 (2d Cir. 2002).  An

unexhausted claim is "reasonably related" to a properly exhausted claim if "the conduct

complained of would fall within the scope of the [administrative] investigation which can

reasonably be expected to grow out of the charge of discrimination."  *Mathirampuzha v. Potter*,

548 F.3d 70, 76 (2d Cir. 2008).  The "reasonably related" doctrine is "essentially an allowance of

loose pleading."  *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 83 (2d Cir. 2001.)

       This Court does not have jurisdiction to adjudicate plaintiff's hostile work environment

claim – to the extent the Complaint may be construed to raise one – because she failed to include

it in her complaint to the New York Division of Human Rights ("DHR").  *See Jenkins v. St.*

*Luke's-Roosevelt Hosp. Center*, No. 09 Civ. 12(RMB)(MHD), 2009 WL 3682458, at *6

(S.D.N.Y. Oct. 29, 2009)(dismissing a hostile work environment for failure to exhaust

administrative remedies).  Plaintiff's DHR complaint does not raise allegations that are

reasonably related to her claim that "defendants have created an atmosphere where she [does] not

feel comfortable working among them anymore in [the Environmental Protection Bureau]."

(Compl. at 15, ¶ 67.)  As defendants observe, she did not even check the appropriate box for

harassment on the complaint form, checking only the boxes for denial of a promotion and

negative performance evaluation.  (Mot. Dismiss at 20; DHR Compl. at 5.)  Because plaintiff

failed to make any reference to an uncomfortable atmosphere or hostile work environment in her

DHR complaint, the Court may not consider it here.  *See Jenkins*, 2009 WL 3682458, at *6

("Plaintiff's [administrative complaint] makes no reference to a . . . hostile work environment.

Rather the [administrative complaint] claims only discrimination.") (citation omitted).

---

[5] As noted here, the DHR complaint fully raises plaintiff's instant allegations with respect to the defendants' failure to promote her, her removal as lead counsel from *Next Millenium*, and the subsequent counseling memorandum. (DHR Compl. at 7-8.)  The exhaustion analysis is therefore unnecessary with respect to the claims discussed in Sections I.A and I.B.

Assuming *arguendo* that plaintiff exhausted her hostile work environment allegations, she fails to state a plausible claim under Title VII. *See Jenkins*, 2009 WL 3682458, at *7 (dismissing a Title VII retaliation claim under Fed. R. Civ. P. 12(b)(6) after assuming administrative exhaustion). Title VII hostile work environment claims arise "when the workplace is permeated with discriminatory behavior that is sufficiently severe or pervasive to create a discriminatory hostile or abusive working environment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 17 (1993). This standard requires plaintiff to plead facts suggesting that there is an "objective hostile or abusive environment" as well as a "subjective perception that the environment is abusive." *Id*. In assessing hostile work environment claims, courts consider the totality of the circumstances and look to factors such as the "frequency of the discriminatory conduct; its severity; whether it is physically threatening and humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id*. As is the case with all Title VII discrimination claims, "it is axiomatic that in order to establish a hostile work environment . . . a plaintiff must demonstrate that the [challenged] conduct occurred because of her protected characteristic." *Jackson v. NYS Dept. of Labor*, No. 09 Civ. 6608(KBF), 2012 WL 843631, at *4 (S.D.N.Y. Mar. 12, 2012) (quoting *Pantane*, 508 F.3d at 113).

Plaintiff has failed to allege that defendants altered her work environment in any way because of her race. As discussed above, plaintiff complains of specific incidents contributing to her allegedly hostile workplace: the failure to promote her, her removal as lead counsel from *Next Millenium*, and the counseling memo. (Compl. at 3-5, ¶¶ 11-25; 8-9, ¶¶ 41-42; 9-10, ¶¶ 44-46.) Even assuming that the allegations are true, and taking them alone or in combination,

plaintiff has hardly established a pattern that is sufficiently severe or pervasive to constitute a hostile work environment.

In an apparent effort to force coherence upon her otherwise meritless claims, plaintiff merely alleges that these incidents created an atmosphere in which she was uncomfortable working and that they affected her passion for environmental law. (Compl. at 14-51, ¶ 67.) As the Court has explained at length, plaintiff has failed to allege that any of the defendants' specific actions were motivated by discriminatory animus. "Other than her allegation that [plaintiff] is African American, and thus a member of a protected class, [plaintiff] has failed to plead any facts that suggest that the conduct she alleges in her . . . Complaint occurred because of her race." *Jackson*, 2012 WL 843631, at *4. It follows that those actions do not support a hostile work environment claim, which requires a showing of discrimination on the basis of a protected class. *See id.* With respect to plaintiff's assertion that defendants created an "uncomfortable atmosphere," she has similarly failed to plead any facts indicating that she felt uncomfortable because of her race. Nor does she allege that "she was subjected to an unpleasant work atmosphere in any way *because* she is [African American.]" *Kelly v. Howard I. Shapiro & Associates Consulting Engineers, P.C.*, No. 11-CV-5035(ADS)(AKT), 2012 WL 3241402, at *9 (E.D.N.Y. Aug. 3, 2012) (emphasis added). She does not even allege that any defendant made a single discriminatory comment towards her. *See Coach Stores*, 163 F.3d at 714 (finding that even occasional racist remarks, though "despicable and offensive," failed to a hostile work environment as a matter of law). In other words, "absent from the complaint are any allegations suggesting even the slightest semblance of [race]-orientated motivation." *Kelly*, at *9. Plaintiff therefore fails to state a claim for hostile work environment under Title VII.

For all of the foregoing reasons, plaintiff has failed to allege any plausible Title VII claims of race discrimination.

## II.    Plaintiff Fails to State a Claim Under 42 U.S.C. § 1983

"A § 1983 claim has two essential elements: (1) the defendant acted under color of state law; and (2) as a result of the defendant's actions, the plaintiff suffered a denial of her federal statutory rights, or her constitutional rights or privileges." *Annis v. County of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998.)  Though plaintiff does not specify which of her federal or constitutional rights defendants' actions may have violated, the Court interprets her allegations of race discrimination as predicate claims implicating plaintiff's right to equal protection under the Fourteenth Amendment.  "[T]he same core standards are applied to intentional discrimination claims brought under Title VII . . . and Section 1983 equal protection claims." *See Nunez v. Cuomo*, No. 11-CV-3457 (DLI)(LB), 2012 WL 3241260, at *13 (E.D.N.Y. Aug. 7, 2012) (citing *Patterson v. Cnty. Of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004)).  Because plaintiff has failed to plead facts plausibly suggesting disparate treatment for purposes of her Title VII claims, she has necessarily failed to establish a § 1983 claim on the same grounds. *See Knight v. Nassau County Civil Service Commission*, 649 F.2d 157, 161 (2d Cir. 1981); *Bazile v. City of New York*, 215 F. Supp. 2d 354, 392 (S.D.N.Y. 2002).  Accordingly, plaintiff's § 1983 claims against the individual defendants must be dismissed.[6]

---

[6] In addition, "it is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994).  A defendant in a supervisory role may be found personally involved in an alleged constitutional violation by directly participating in such violation, failing to remedy the violation after being notified of the problem, creating a policy or custom under which unconstitutional practices occur, allowing such policy to continue, or being grossly negligent in the management of subordinates who cause the unlawful condition or event. *See id*  Here, defendant has made no allegations that defendant Dean was personally involved in the decision not to promote her or that defendant Kennedy had anything to do with the counseling memorandum.  In addition, she has made no allegations that Kennedy played a role in the allegedly increased scrutiny of plaintiff's work or the diminution of her responsibilities.  (Compl. at 15, ¶ 69.)  Even if the Court were to consider plaintiff's § 1983 claims separate and

**III.**     **Plaintiff Fails to State a Claim for Defamation**

Defendant argues that plaintiff has failed to "allege the specific words that she claims defamed her" and has not "allege[d] how or where the allegedly defamatory statements were published, or to whom." (Mot. Dismiss at 23.) However, "the liberal pleading standard for defamation is satisfied by an adequate identification of the purported communication, and an indication of who made the communication, when it was made, and to whom it was communicated." *Broome v. Biondi*, No. 96 CIV. 0805 RLC, 1997 WL 83295, at *2 (S.D.N.Y. Feb. 10, 1997). Here, plaintiff has identified two allegedly defamatory statements: the counseling memo that criticized her work performance, and defendant Rogers' statement that "she . . . fucked up the case." (Compl. at 8, ¶ 39; 10, ¶ 46.) Neither statement, however, is actionable.

**A.**     **The Counseling Memo**

Plaintiff alleges that the counseling memo "defam[ed] her reputation by asserting untruths" pertaining to plaintiff's work performance. (Pl.'s Br. at 8.) The Court construes this as a libel claim because the complaint addresses statements expressed in writing. *See Celle v. Filipino Reporter Enter., Inc.*, 209 F.3d 163, 176 (2d Cir. 2000). To recover in a libel action under New York law, a plaintiff must establish five elements: (1) a written defamatory statement of fact concerning the plaintiff; (2) that was published to a third party; (3) due to the fault of the defendant (under a negligence or actual malice standard, depending on the status of the libeled party); (3) the defamatory statement was false; and (5) either the libeled party suffered special damages, or the statement was slanderous per se. *Id.*

---

apart from her Title VII claims, which it may not do, plaintiff has failed to make the required allegations of personal involvement to sustain a § 1983 against defendants Dean and Kennedy. *See id.*

Regardless of its allegedly defamatory content, the counseling memo in question is protected by what is known as the common interest privilege. In New York, "there exists a qualified privilege where the communication is made to persons who have some common interest in the subject matter." *Campanella v. County of Monroe*, 853 F. Supp. 2d 364, 371 (W.D.N.Y. 2012). The common interest privilege applies to internal work-related communications concerning the actions of its employees, a category into which the counseling memo in question certainly falls. *See Meloff*, 240 F.3d 138, 46 (2d Cir. 1993); *McNaughton v. City of New York*, 234 A.D.2d 83, 84 (1st Dep't 1996) (finding statements made "in disciplinary memoranda evaluating plaintiff's performance" to be protected by qualified privilege"). The privilege creates a rebuttable presumption of good faith that constitutes a complete defense to defamation, and the plaintiff may only rebut this presumption by demonstrating that the statement in question is false and that the defendant abused the privilege. *See Weldy v. Piedmont Airlines, Inc.*, 985 F.2d 57, 62 (2d Cir. 1993). Plaintiff's allegations fall far short of making either of these two required showings, and she therefore fails to state a claim for libel.

**B.     Defendant Roger's Statement**

Though plaintiff does not use the words "defamation" or "slander" with respect to defendant Rogers' oral criticism of her work on *Next Millenium*, Rogers' comments can be construed as defamatory. According to plaintiff, defendant Rogers "yell[ed] in [an] open area" that "she . . . fucked the case up." (Compl. at 8, ¶ 39.) Under New York Law, there are four elements necessary to establish a prima facie case of slander: "(1) an oral defamatory statement of fact, (2) regarding the plaintiff, (3) published to a third party by the defendant, and (4) injury to the plaintiff." *See Weldy*, 985 F.2d at 61. The fourth element requires a showing of special damages, which means economic damages. *See Liberman v. Gelstein*, 80 N.Y.2d 429, 435 (Ct.

App. 1992) ("Slander as a rule is not actionable unless the plaintiff suffers special damages . . . [which] contemplate the loss of something having economic or pecuniary value."). A plaintiff is not required to plead or prove special damages, however, for certain categories of statement that are considered defamatory per se. *See DiFolco v. MSNBC Cable, L.L.C.*, 831 F. Supp. 2d 634, 648 (S.D.N.Y. 2011) (New York law "presumes that damages result from those specifically enumerated categories of statements" that constitute defamation per se). One of these categories consists of statements "that tend to injure another in his or her trade, business or profession." *See Lieberman v. Gelstein*, 80 N.Y.2d 429, 435 (Ct. App. 1992).

Defendant Rogers' statement that plaintiff "fucked up the case" is one that would tend to disparage or "injure [her] in her] . . . profession." *Id.* However, it falls within the purview of New York's "single instance rule" – a narrow exception to this category of defamation per se – and thus is not actionable absent a showing of special damages. *See Larson v. Albany Medical Center*, 676 N.Y.S.2d 293, 296 (identifying an exception to the per se rule "where a publication charges a professional person with a single error in judgment, which the law presumes not to injure reputation"). The "single instance rule" applies where a defamatory statement accuses plaintiff of a "single dereliction in connection with his profession." *Celle*, 209 F.3d at 180. A statement identifying a single professional error in judgment does not amount to an accusation of "general incompetence, ignorance or lack of skill and is [therefore] not deemed actionable unless special damages are pleaded and proven." *Id.* This rule is in place because New York "recognizes the human tendency to err, and that, therefore, to state that . . . a professional person has erred in a particular instance would not presumptively cause damage to that person in his business or profession, because such statement would imply no more than that the person was human." *Id.* at 180-181 (internal citation and quotation marks omitted). The rule is limited to

instances "best read as errors, mistakes, or lapses and judgment . . . [rather than] willful unethical or illegal misconduct" or "a total disregard of professional ethics." *Lucking v. Maeir*, No. 03 Civ. 1401(NRB), 2003 WL 23018787, at *6 (S.D.N.Y. Dec. 23, 2003) (internal citation and quotation marks omitted).

Defendant Rogers' statement accused plaintiff of a single professional error: that she "fucked up" the *Next Millenium* case. (Compl. at 8, ¶ 39.) This statement cannot be said to impute a general incompetence, ignorance or lack of skill on plaintiff's part, and therefore does not constitute slander per se. *See Croton Watch Co., Inc. v. National Jeweler Magazine, Inc.*, No. 06 CV 662(GBD), 2006 WL 2254818 at *8 (S.D.N.Y. Aug. 7, 2006) (finding that a "statement detailing a lone instance of improper conduct may have some adverse effect on one's business or reputation, [but] does not transform one critical assertion into a course of conduct" and is therefore "subject to the single instance rule"). Because plaintiff has alleged no economic or financial loss, she has failed to plead special damages and therefore her claim is dismissed. *See id.* at *5 ("Where the subject statement is not defamatory per se, special damages must be plead . . . Since plaintiff has failed to plead special damages, dismissal of the defamation cause of action is warranted.").

## CONCLUSION

For the foregoing reasons, defendant's motion is GRANTED and plaintiff's Title VII, Section 1983, and state law defamation claims are hereby DISMISSED without prejudice. The Clerk of Court is directed to enter judgment in favor of defendant and close the case.

SO ORDERED.

Dated: Brooklyn, New York
      March 20, 2013

*Roslynn R. Mauskopf*

_____
ROSLYNN R. MAUSKOPF
United States District Judge